# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

ROSEMARY SCHEIB,

     Plaintiff,

v.                                 2:22-cv-489-NPM

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

## ORDER

Plaintiff Rosemary Scheib seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings. (Doc. 12),[1] Scheib filed an opening brief (Doc. 17), the Commissioner responded (Doc. 18), and Scheib replied (Doc. 21). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On September 23, 2020, Scheib applied for supplemental security income. (Tr. 212-18). She asserted an onset date of January 1, 2020, alleging disability due to the following: chronic back pain, leg pain, shortness of breath, scoliosis, and major depression. (Tr. 58-59, 82, 212). As of the application date, Scheib was 52 years old with a tenth-grade education. (Tr. 241). Scheib previously worked as a dry cleaner and at a family thrift center. (Tr. 76, 88, 241).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 416.905.

[3] *See* 20 C.F.R. §§ 416.913(a)(2)(i)(A)-(D) (discussing the various categories of work-related abilities), 416.922(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.945(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.994(b)(1)(iv) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 416.911(a).

On behalf of the administration, a state agency[5] reviewed and denied Scheib's application initially on February 10, 2021, and upon reconsideration on June 2, 2021. (Tr. 58-79, 80-89). At Scheib's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing on November 16, 2021. (Tr. 30-51). On November 24, 2021, the ALJ issued an unfavorable decision finding Scheib not disabled. (Tr. 10-23). Scheib's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Scheib then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a

qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Scheib had not engaged in substantial gainful activity since September 23, 2020, the application date. (Tr. 12). At step two, the ALJ characterized Scheib's severe impairments as: obesity, dyspnea, mild intellectual disability, and adjustment disorder. (Tr. 12). At step three, the ALJ determined Scheib did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 13).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to occasionally climb stairs and ramps, but never climb ladders and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold and heat; occasional exposure to moving mechanical parts; avoid all unprotected heights; occasional, concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations (SCO) of the DOT; and understand, remember, and carryout simple repetitive reasoning level 1 to 2 tasks.

(Tr. 17). But because Scheib had no past relevant work, there was no occasion for the ALJ to make a step-four finding. (Tr. 21). At step five, the ALJ found Scheib could perform other work that exists in significant numbers in the national economy. (Tr. 22). In support, a vocational expert testified that an individual of Scheib's age,

education, work experience, and RFC can perform the following representative occupations:

- *Assembler, small parts,* DOT #706.684-022, light; SVP 2, with 32,000 jobs in the national economy;

- *Labeler,* DOT #920.687-126, light, SVP 2, with 30,000 jobs in the national economy;

- *Inspector and Packer,* DOT #559.687-074, light, SVP 2, with 21,000 jobs in the economy.

(Tr. 22).[6]

Thus, for purposes of the Act, the ALJ concluded Scheib was not disabled from September 23, 2020, the application date, through November 24, 2021, the date of the decision. (Tr. 23).

## II.   Analysis

Scheib's appeal presents the following issues for review:

(1)   Whether the ALJ erred by improperly evaluating Scheib's intellectual disorder under listing 12.05B;

(2)   Whether the RFC is supported by substantial evidence;

(3)   Whether the ALJ failed to resolve conflicts between the vocational expert's testimony and the DOT; and

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

(4)    Whether the ALJ failed to carry his burden at step five of identifying other work that exists in significant numbers in the national economy.

## A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district

court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Substantial evidence supports the ALJ's finding at step three that Scheib does not meet an agency-listed impairment.**

At step three of the ALJ's sequential evaluation, the ALJ considers whether a claimant's impairments, either individually or combined, meet or medically equal the severity of an agency-listed impairment. 20 C.F.R. § 416.920(4)(iii). If the claimant satisfies this threshold, the claimant is presumptively disabled, and the ALJ's evaluation ends. *Id.* Scheib argues that she meets the criteria for an intellectual disability found in listing 12.05B. This listing provides, in pertinent part, that a claimant is disabled if she has a full-scale IQ score of 70 or below and significant deficits in adaptive functioning currently manifested by either one *extreme* limitation, or two *marked* limitations, in the four areas of functioning.[7] *See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.05B (2012).

The four areas of functioning are: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace, and (d) adapt or manage oneself. 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.00B(2)

---

[7] A third element requires that the disorder began prior to the age of 22. *See* 20 C.F.R. Part 404, Subpart P., Appendix 1 § 12.05B. (2012). But this is not at issue here.

(2012). And an "extreme" limitation is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation is defined as a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. § 416.926a(e)(2)(i).

That Scheib meets the first element of listing 12.05B appears undisputed. Scheib asserts she has a full-scale IQ score of 57, which is less than 70, and the ALJ did not suggest otherwise. Indeed, he highlighted this IQ score during his step-four evaluation. (Tr. 19). Nevertheless, the ALJ concluded that Scheib did not meet the second element. The ALJ determined that Scheib had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself. Because the ALJ found Scheib's impairments do not cause at least two "marked" limitations or one "extreme" limitation, she did not meet the "paragraph B" criteria. (Tr. 14-15). Scheib disputes this finding.

There are multiple problems with Scheib's argument. First and foremost, she fails to make one. Instead of providing any sort of analysis, she simply cites to Dr. Paula Bowman's finding of two marked limitations and conclusively asserts the ALJ's decision is erroneous because he did not adopt that finding. Scheib makes no

additional argument.[8] This is insufficient. *See, e.g., Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (claimant forfeited argument because he neither developed it nor provided authority in support). And the court's scheduling order explains that "conclusory statements or arguments may be disregarded and rejected by the court." (Doc. 8 at 4). If the court were to address such conclusory positions, without any argument, it would equate to reweighing the evidence or revisiting the issue de novo. *See Samuels v. Colvin*, No. cv 114-180, 2015 WL 7068137, *3 (S.D. Ga. Oct. 20, 2015), *report and recommendation adopted*, 2015 WL 7069340 (Nov. 12, 2015). This the court cannot and will not do.

To be sure though, the ALJ explained he found unpersuasive Dr. Bowman's findings of marked limitations because they are inconsistent with Scheib's stable findings on examination by several medical sources, Scheib's lack of treatment history, and Scheib's ability to engage in activities of daily living—including shopping, managing bank accounts, using public transportation, cooking, and caring

---

[8] Curiously, Scheib suggests the ALJ offered only a "conclusory statement" that Scheib did not meet this listing. (Doc. 17 at 5 ("[t]he ALJ's conclusory statement [that Scheib did not meet the listing] is erroneous and not based on substantial evidence.")). But the ALJ dedicated over a page of his opinion analyzing the four areas of functioning, including a paragraph to each individual area. (Tr. 14-15). And he spent three pages analyzing listing 12 generally. (Tr. 14-17). It is Scheib's argument that is conclusory, not the ALJ's analysis.

for grandchildren. (Tr. 21). The record supports this conclusion. (Tr. 272-74, 280, 395, 396, 404-05). Thus, the ALJ complied with the applicable regulations, and substantial evidence supports his step-three determination. *See* 20 C.F.R. § 416.920c(b); *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("[T]he ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record[.]").

### C.   Substantial evidence supports the RFC.

The RFC provides that Scheib can perform work that requires her to "understand, remember, and carryout simple repetitive reasoning level 1 to 2 tasks." (Tr. 17). But Scheib believes this RFC overlooks certain mental limitations. According to Scheib, the ALJ found persuasive the opinions of Dr. Paula Bowman, Dr. Cheryl Kasprzak, Dr. J. Patrick Peterson, and Dr. James Brown but failed to include in the RFC certain mental limitations opined by these psychologists. (Doc. 17 at 6). And because the ALJ failed to include these persuasive doctors' findings in the RFC, or explain the reason for such omission, she argues the RFC is "contrary to law." (Doc. 17 at 6-13). This point has no merit.

So long as the ALJ's decision makes clear he considered the claimant's medical condition as a whole, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Mitchell v. Comm'r, Soc. Sec.*

*Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citation omitted). And when an ALJ finds a medical source's opinion persuasive, an ALJ "does not abdicate their authority—and obligation—to reach an RFC determination based on a thorough review of the entire evidentiary record." *Vilches v. Kijakazi*, No. 3:21-cv-15-KFP, 2022 WL 11455775, *3 n.2 (M.D. Ala. Oct. 19, 2022). "An ALJ does not properly discharge [his] duty by finding a single medical opinion persuasive and then deferring verbatim to that physician's findings. The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive." *Id.*; *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ."); *Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, *5 (M.D. Fla. Mar. 31, 2022) ("But finding an opinion persuasive does not mean it is controlling."). So Scheib's concern that the ALJ did not incorporate into the RFC every finding from a generally persuasive source is unfounded. What matters is whether the record reveals enough about the supportability and consistency of the medical source's opinion that the court can determine the RFC is supported by substantial evidence. *See Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173, *4 (M.D. Ala. Feb. 11, 2022); *Cook*, 2021 WL 1565832, at *3. Such is the case here.

The court first addresses Dr. Bowman's opinions. Scheib notes that Dr. Bowman found several marked impairments, determined Scheib had a full-scale IQ score of 57, a verbal IQ score of 61, and identified other mental limitations. This is all true. But what is not true is Scheib's contention that the ALJ found all this persuasive. To the contrary, the ALJ specifically stated he found unpersuasive Dr. Bowman's findings of marked limitations. As discussed above, substantial evidence supports this finding. The ALJ was only persuaded by Dr. Bowman's findings of moderate limitations because they are consistent with findings on examination and Scheib's lack of treatment history. (Tr. 21).

As for the IQ score, the ALJ made clear he considered it in formulating his RFC. (Tr. 19). Besides, an IQ score is not dispositive of a claimant's general abilities when it is inconsistent with other record evidence. *Cf. Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873 (11th Cir. 2014) ("A valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior."). Substantial evidence supports discounting Scheib's IQ scores. For instance, the ALJ cited Dr. Bowman's opinion that Scheib could understand, remember, and apply simple directions and instructions. (Tr. 361). Scheib also reported having no problems understanding the documentation she was asked to sign prior to her mental health evaluation. (Tr. 404). Dr. Kasprzak observed that Scheib could give an

accurate meaning or understanding of a proverb, spell the word "house" forward on the first attempt and backwards on the second attempt, and count backwards from 20 by series of threes on the second attempt. (Tr. 405-06). Scheib had never received any mental health treatment and reported reading for two hours a day and using the internet for six to seven hours per day. (Tr. 405). And she managed to complete several of her application reports herself, including her function report. (Tr. 278 (indicating the person completing the form is Rosemary Scheib)). So substantial evidence supports the ALJ's discount of Dr. Bowman's opinions.

Next, Scheib points to Dr. Cheryl Kasprzak's findings that Scheib's intellectual ability, abstract reasoning, and remote memory were below average, and her attention and concentration were not within normal limits. (Doc. 17 at 16-17). Although the ALJ found Dr. Kasprzak's opinion persuasive, he was specifically persuaded by the psychologist's finding that Scheib has the requisite skills and cognitive capacity to manage finances independently of others and that the claimant had a fair prognosis for gainful employment. (Tr. 21, 405). The RFC reflects this finding. To the extent the ALJ did not include other limitations in the RFC, as explained above, he was not required to do so. *See Freyhagen*, 2019 WL 4686800, at *8; *Vilches*, 2022 WL 11455775, at *3 n.2.

Scheib also takes issue with the ALJ's omission of certain opinions from Dr. Brown and Dr. Peterson, state agency psychologists. The ALJ found persuasive their

conclusions that Scheib has severe mental impairments and mental limitations. (Tr. 20). Indeed, this is consistent with the ALJ's finding at step two that Scheib suffered from a severe impairment of "mild intellectual disability." (Tr. 12). But Scheib, again, believes the ALJ should have incorporated into the RFC their specific finding that she suffers moderate limitations in four different areas of functioning. (Doc. 17 at 9-10). Again, the ALJ need not do so because the record reflects the ALJ's thorough consideration Scheib's mental limitations.

Not done yet, Scheib complains that Dr. Kasprzak was not provided with Dr. Bowman's psychological evaluation report. (Doc. 17 at 8). Essentially her argument is that, as a non-examining psychologist, Dr. Kasprzak's findings were incomplete without this report. Thus, Scheib argues Dr. Kasprzak's opinion was entitled to little weight, and the ALJ's reliance on her opinions taints the RFC.[9] (Docs. 17, 21). There is a major problem with this argument: Dr. Kasprzak was an examining psychologist (not non-examining).[10] So this argument is baseless.

Even if Dr. Kasprzak's was non-examining, an ALJ can still give great weight to a non-examining consultant who did not have access to a complete record if the

---

[9] The inconsistency in Scheib's arguments is too unmistakable to ignore. On one hand, she argues the ALJ erred in not incorporating Dr. Kasprzak's opinions into the RFC. Yet here Scheib contends that Dr. Kasprzak's opinions are unreliable because she did not have a complete record.

[10] Scheib consulted Dr. Kasprzak for a General Clinical Evaluation with Mental Status Examination on January 27, 2021. (Tr. 403-06).

ALJ had access to the entire record and independently considered the evidence the consultant could not. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (noting that, even if the non-examining doctor was unable to review all the medical records, the ALJ, who made the ultimate determination on the RFC, had access to the entire record); *Dorelle L. H. v. Kijakazi*, No. cv 20-1057 (NEB/BRT), 2021 WL 3555780, *8 (D. Minn. July 27, 2021), *report and recommendation adopted sub nom.*, 2021 WL 3552246 (D. Minn. Aug. 11, 2021). As previously discussed, the ALJ independently considered Dr. Bowman's opinions and found them partially persuasive. (Tr. 21). So this argument fails.[11]

Finally, Scheib feels the ALJ erred by omitting her "extremely limited reading skills." (Doc. 17 at 10). She cites her hearing testimony where she stated she has a tenth-grade education, can do "some" reading and math, cannot read a newspaper, and can read only portions of instructions on the back of a microwave box. (Tr. 26-27). But the ALJ explained that "the record does not support [Scheib] is as functionally limited to the extent she alleged." (Tr. 21). In support, he noted Scheib reported she reads for two hours a day and uses the internet six to seven hours per

---

[11]  In her reply brief, Scheib makes this same argument for Dr. Brown and Dr. Peterson—that they did not review Dr. Bowman's evaluation report. (Doc. 21 at 6). This differs from the argument in her opening brief in which she indicates Drs. Brown and Peterson did have access to the report, but they did not sufficiently discuss it. (Doc. 17 at 9). She had it right the first time. The record is clear Drs. Brown and Peterson not only received Dr. Bowman's evaluation in evidence but also considered it in their analysis. (Tr. 62, 65, 82-82).

day. (Tr. 405). Not to mention Scheib managed to complete several of her application reports herself, as noted above. (Tr. 278). So the ALJ need not adopt Scheib's self-diagnosis.

Overall, the ALJ explained the RFC "has been reduced to account for [Scheib's] supported impairments, symptoms, and minimal treatment and supported functional limitations." (Tr. 21). The ALJ's thorough opinion makes clear he considered Scheib's professed mental limitations as a whole rather than broadly rejecting them. Based on the foregoing, substantial evidence supports the RFC allowing for jobs that require Scheib to understand, remember, and carryout simple repetitive reasoning level 1 to 2 tasks.

### D. No conflict exists between the vocational expert's testimony and the DOT.

Scheib argues that her low IQ score "ranks in the extremely low range and is indicative of significant intellectual defects." (Doc. 17 at 15). Thus, the argument goes, because the ALJ failed to include these low test scores and their "associated limitations" in the RFC, he provided an improper hypothetical to the vocational expert. According to Scheib, this resulted in the vocational expert identifying occupations that conflict with Scheib's intellectual deficits. (Doc. 17 at 15). However, as determined in the previous section, the ALJ's RFC is supported by substantial evidence. And, in formulating the RFC, the ALJ sufficiently accounted

for Scheib's IQ scores. Scheib offers no additional argument to hold otherwise.[12]

### E. Substantial evidence supports the ALJ's finding that Scheib can perform other work that exists in significant numbers in the national economy.

Scheib argues that because the ALJ failed to resolve the purported conflicts between the vocational expert testimony and the DOT, his finding that Scheib can perform work that exists in the national economy is flawed. Because no such conflict exits, this argument is moot.

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on September 29, 2023.

_Nicholas P. Mizell_

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

---

[12] The scheduling order explains that "[p]urported downstream effects of an alleged point of error do not warrant separate discussion." (Doc. 8 at 4). Scheib's argument in this section, as well as the next, run afoul of this order.